Mr. Justice WAYNE
delivered the opinion of the court.
He stated facts at length; and after quoting the letters of the bank to Hamilton of 16th October, 1845, and to Wet-more of 16th September, 1850, and Wetmore’s indorsement on it, — which latter, of the 16th September, his honor observed, “ is a substantial repetition of the conditions upon the performance of which the bank would give to Hamilton 10 per centum, with a full acknowledgment, that he had rendered such services as entitled him to have it,” — proceeded as follows:
Viewing the case as the parties have chosen to make it by agreement, we must consider it differently from what we would ■otherwise have done, and will consider, as the purpose of the suit is declared to be to settle priorities between the parties to it, what are the rights of the complainant in that particular, and how the priority which he claims has been affected by his own remissness and negligence.
It must be remembered that he rests his claim upon a paper executed by Hamilton of all his “ right and claim for any commission or compensation for services rendered or to be rendered by him to any person and body corporate, in the prosecution of any claim or claims for any and every person and persons and body corporate, on the said government Of *621 Texas, subject to any previous assignment thereof, which Hamilton might have made before.”
Mi\ Spain, the complainant, is in a court of equity asking a priority of payment over other creditors, out of a fund held in trust by Mr. "Wetmorc for the benefit of Hamilton, who became assignee of Hamilton on his acceptance in the discharge of his duties of the relation to them as the trustee of the fund. No inquiry was made by the complainant, as he had a right to make, when he accepted the paper from Hamilton, as to who were the persons or body corporate from whom he anticipated commissions or compensation for the successful prosecution of their claims upon Texas. He certainly had the right to make such an inquiry from Hamilton, and in the situation in which Hamilton and himself were at the moment, could either have coerced at least such a reply as would have enabled him to protect himself by notices of his interest in the matter, knowing as he then did that Hamilton was an insolvent man, and being admonished by the paper itself that the rights which Hamilton was professing to give him were but secondary to the right of other assigness of Hamilton, as the paper declares they were. Instead of any such care and caution, he accepted the paper, or assignment as it is called, not in any way guarding himself from the power which Hamilton might exercise to sell and borrow money upon the same fund from innocent parties, without any possibility of the buyer or lender having any knowledge of the claim which Mr. Spain now makes upon the fund in controversy. Mr. Spain neither asked for information to secure his own rights, or to protect the rights of others from such a result. And it was not made until some time after Mr. Wetmore had accepted Hamilton’s draft in favor of Corcoran & Higgs, that Mr. Spain thought of giving a notice of any kind of his claim upon the fund. He then says in his bill, that to make his assignment effectual, and to fasten notice of it upon the • government of Texas, that he had sent through the post-office at Galveston to the treasurer of Texas a copy of Hamilton’s assignment to him, which appears to have been received. It was dated the 8tb *622 .Tune, 1851. If Mr. Spain had been vigilant in his inquiries as to what had been done by Texas for the payment of its debts; he would have learned by inquiries, while he ivas at Galveston, that Wetmore, as the assignee of the bank’s Texas bonds, had, two years before the date of his notice, filed those bonds, as the act of Texas directed it to be done, witli the treasurer and comptroller of Texas. But if that had not been done by Mr. Wetmore, and the notice of the complainant had come to his knowledge, it could not in any way invalidate the loan of Corcoran & Biggs, or his acceptance of Hamilton’s order in their favor, which had been made prior to the date of the letter from the complainant, transmitting to the treasurer of Texas a copy of the paper-under which he claimed to be the assignee of Hamilton.
The same may be said of the paper given by Mr. May, on the 9th September, 1851, to Mr. Corwin, the Secretary of the Treasury, which wras intended to prevent the payment of the fund to any other person than Mr. Spain. No one will doubt that such a paper for that purpose was written and placed by him in the Treasury Department; but it cannot in any regard affect the claim of Corcoran & Biggs upon the fund, as their dealings with Hamilton, and Wetmore’s acceptance of Hamilton’s order in their favor, took place twelve months before, on the 21st and 24th September, 1850. The paper left by Mr. May with the secretary cannot be presumed to have been made known to Wetmore to affect his lights, as the legal holder and trustee of Hamilton, to the fund, or those of Bobb & Co., or those of Hill, as it has not been presented and proved in the manner that the law requires all papers or documents to be, from cither of the departments of the Government, before they can be received as testimony in courts of justice. In fact the complainant, Mr. Spain, neither made inquiries to protect himself or to secure others from being imposed upon by Hamilton. He knew, as his bill shows, all the proceedings of this Government for the payment of the Texas debt, and where to go for information, and was advised of the notice given by the Secretary of the Treasury to the holders if Texas bonds as early as March, *623 1851. Instead of acting promptly and with vigilance, he delays all notice to Wetmore for more than six years; until he brought his bill. The complainant says, in excuse for not having given earlier notice to Wetmore, that he was ignorant of the existence or terms of the papers connecting Hamilton and Wetmore with the fund in controversy. The answer to that is, that he should have made inquiries, and should not have left himself ignorant, as he did, when he took the paper from Hamilton upon which he asks for a priority of payment. On the contrary, Wetmore and Corcoran & Higgs used every precaution to protect themselves before the latter lent to Hamilton $25,000, and also to warn others who might come afterwards as dealers in the fund with Hamilton.
No creditor has a right to take a blind assignment from his debtor upon the latter’s anticipation of becoming interested in a particular fund to be realized thereafter, without making such inquiries as the occasion may require, and then to ask in equity for a priority in the payment of his debt merely from the precedency in date of his assignment over those who became subsequently assignees for part of the same fund for actual value given to the cestui que trust of the fund. It is our opinion that Wetmore, Corcoran & Higgs, and Hill are meritorious creditors of Hamilton, and that their claims upon the fund were acquired without notice or the possibility of their having had it, when they became the assignees of Hamilton, and that the complainant in this case has no priority of payment out of the fund in consequence of remissness in not having given notice of his claim as the assignee of Hamilton.*
This case has been examined by us very fully and with every regard for the arguments of the able counsel representing the complainant. We think it to be clearly within the principles decided by this court in Judson v. Corcoran.† *624 It is clearly within the cases which have been so fully and ably reported, of Dearee v. Hall, and Leveridge v. Cooper, in 3 Russell.* The interests of Wetmore, Corcoran & Riggs, and Hill in the fund, are valid and operative as assignments. To constitute an assignment of a debt or other chose in action, in equity, no particular form is necessary. A draft drawn by A. or B. in favor of C. for a valuable consideration, amounts to a valid assignment to C. of so much of the funds of A. in the hands of B. Any order, writing, or act which makes an appropriation of a fund, amounts to an equitable assignment of the fund. The reason is, that the fund being a matter not assignable at law, nor capable of manual possession, an ■ appropriation of it is all that the nature of the ease admits of, and therefore it is held good in a court of equity. As the assignee is generally entitled to all the remedies of the assignor, so he is subject to all the equities between the assignor and his debtor. But in order to perfect his title against the debtor it is indispensable that the assignee should immediately give notice of the assignment to the debtor, for otherwise a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by a payment to the assignee before such notice.† No cases can be cited, or were in conflict with those upon which we rely for the judgment which we are about to give in this case.
In respect to the question of usury alleged by the complainant against Corcoran & Riggs, to affect their right to recover their loan to Hamilton, we do not deem it necessary to follow the arguments of counsel. The complainant, as a suitor in equity, could only have relief for the excess over the real debt, as he admits it to. have been a loan by Corcoran & Riggs to Hamilton of $25,000, in the way and at the date mentioned in their answer to his bill.‡ The application of the rule in this case cannot be denied, because tire complainant alleges his bill to bo for claims upon a fund *625 by several parties contesting their equities to a priority or payment.
The charge of usury against Corcoran & Biggs depends altogether upon a paper marked “ private and confidential,” bearing date the 21st of September, 1850, the day that Hamilton drew his order upon Wetmore in favor of that firm. The paper is admitted to be in the handwriting of Hamilton, and is signed by himself and by Mr. Corcoran for his firm. Though drawn and signed on the day that the loan was made, the reading of it shows that it had no connection with the arrangement between Hamilton and Corcoran & Riggs for lending the money. The paper is begun by a recital of the loan at an interest of six per cent., and it proceeds to say, without any mention of the subject, that he, Hamilton, in ease of his not procuring for Corcoran & Biggs the agency at Washington for the settlement of the Texas debt, will allow a commission on the loan of two thousand dollars, to be added to the interest of six per cent. Not that he would pay, but that he would allow, and that the balance of the $80,000 was to be credited to his account on a final settlement of the same, concluding the paper with a provision characteristic of Hamilton, as. this record shows, that the “ contract was not to be in prejudice of a liberal remuneration which Corcoran & Riggs have agreed to allow him in the event of his procuring for them the agency for the settlement of the Texas debt.” It must be observed that Hamilton in this paper promises nothing absolutely, though he secures or stipulates for a payment to himself by Corcoran & Biggs of a liberal remuneration in the event of his getting for them the agency. It cannot fail to be remarked, in reading the paper, that Hamilton is left by it either to get the agency for Corcoran & Biggs or not to do so, as it may be his interest to do, and that he is not obliged by words of any force amounting to a contract to pay the two thousand dollars which he says shall be added to the interest of six per cent, upon the loan. It would be difficult, indeed, to find anything like a paper of this kind in any attempt by parties to a usurious loan. From the whole of *626 it, it is certain that no part of it contains a promise to pay anything absolutely in addition to the loan, and the six per cent, interest for which it stipulates. The payment of anything additional depends also upon a contingency, and not upon any happening of a certain event, which of itself would be deemed insufficient to make a loan usurious. No part of the paper, taken in connection with all the circumstances of the case, could be used as a predicate from which it could be affirmed that the commission to be allowed by Hamilton was an intentional device between himself and Mr. Corcoran to make the loan to the former usurious. The paper is uncertain and so curious that if any conjecture can be allowed as to the temper and character of Hamilton, as they are shown by the record, it may be supposed to have been intended by him to allure Mr. Corcoran into the belief that Hamilton’s influences in Texas were so prominent that he was wiling on his part to promise to forfeit the sum of $2000, if Corcoran & Riggs would make him other advances to aid him in procuring for them the agency. Whatever may have been the motives of Hamilton for drawing such a paper, we cannot infer from the paper itself and all the circumstances attending it, that it was designed by those who signed it as a device to make the contract for a loan usurious. Mr. Corcoran, however, by having incautiously signed it, has subjected himself, in the pleadings and ai’gument of the cause, without there having been any foundation for such a charge, to a professional imputation of having intended to make a usurious loan.
We have discussed this case in all the relations which its circumstances, proofs and admissions place the parties with each other. Mr. Spain, as the representative of Mrs. McRae, claims a priority of payment out of the fund on the ground that it had been assigned to him for that purpose. If the paper, as executed by Hamilton and received by Mr. Spain, could by the force of its provisions have the efficacy of an assignment, there would be some coloring for the claim of a priority of payment. Rut it has not, for it is expressly declared that it was made subject to other assignments which *627 had been previously made. To whom or for what amounts is not said. Hamilton then executed the paper subject to them, and Mr. Spain so received it, without knowing that he could have any interest in the fund. Had they been otherwise, Mr. Spain’s claim of priority would have been lost by his omission to make those inquiries suited to the occasion, and he leaving it in the power of Hamilton to make assignments to others of parts of the same fund. There is no doubt that he did so to Corcoran & Biggs, to Bobb & Co., and to Hill, without either of them having had notice of any dealing between Hamilton and Spain. They have the right to a priority of payment out of the fund, and we affirm the decree of the Circuit Court with costs.
Case remanded..
Messrs. Justices MXLLEB and SWAYNE dissented.

 Foster v. Blackstone, 1 Mylne & Keen, 297; Tirson v. Ramsbotham, 2 Keen, 25; Meaux v. Bell, 1 Hare, 78; Loomis v. Loomis, 26 Vermont, 198; Wardi v. Morrison, 25 Ibid., 598.

 17 Howard, 612.

 Pages 1-64.

 2 Story’s Equity Jurisprudence, 376, g 1047, and the cases cited.

 Stanley v. Gadsby et al., 10 Peters, 521.